Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.: 20-CIV-80266-RAR**

HOWARD COHAN,

     Plaintiff,

vs.

DK DELRAY DOWNTOWN LLC,
d/b/a COURTYARD BY MARRIOTT DELRAY
BEACH,

     Defendant.

_____/

**CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE**

IT IS HEREBY stipulated and agreed by and between Plaintiff, HOWARD COHAN ("Plaintiff"), and Defendant, DK DELRAY DOWNTOWN LLC d/b/a COURTYARD BY MARRIOTT DELRAY BEACH ("Defendant"), as follows:

**WHEREAS**, Plaintiff filed the above styled action against Defendant for alleged violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §12182, et seq. ("ADA"), pursuant to which Plaintiff sought injunctive relief as well as attorneys' fees, expert fees, expenses and costs ("Action");

**WHEREAS**, Plaintiff and Defendant (collectively "Parties" or individually "Party") have agreed to a settlement of the Action as more particularly set forth in this Confidential Settlement Agreement and Release ("Agreement");

**WHEREAS**, Defendant denies any liability or violation of the law as alleged in the Action; and

**WHEREAS,** the Parties desire to avoid further expense, time, effort and uncertainty in

1

regard to the Action.

**NOW THEREFORE,** in consideration of the mutual covenants and undertakings contained herein, and other good and valuable consideration, the Parties agree to the following terms and conditions as full and complete settlement of the Action:

1. **Modifications**.  Defendant shall, within twelve (12) months from the date of this Agreement ("Modification Deadline"), make the modifications to the real property located at 135 SE 6th Avenue, Delray Beach, Florida 33483 ("Premises") listed in Exhibit "A" attached hereto and made a part hereof for all purposes ("Modifications").  If the Modifications are not timely completed due to acts of God, the actions or inactions of third parties, or reasons beyond Defendant's control (including, but not limited to inability to obtain building or zoning permits, failure of city/county inspectors to make inspections, contractor defaults, or work stoppages), then Defendant shall be allowed additional time in which to complete the modifications and shall not be deemed to be in violation of the completion date.  In such case, Defendant or Defendant's counsel shall provide written notice to Plaintiff's counsel of the delay, the reasons therefor, the anticipated date of completion, and shall otherwise make a good-faith effort to effect implementation as soon as reasonably possible thereafter.

2. **Release**.   In exchange for the good and valuable consideration set forth herein, the sufficiency of which is hereby acknowledged, the Parties hereto mutually release each other, or through their corporate capacity, agents, employees, family members, partners, successors, assigns, and heirs, along with anyone claiming by or through them, jointly and severally (collectively the "Releasing Parties"), hereby release, acquit, satisfy and discharge the other, to the extent and exclusively as to the subject facility only and along with any and all of their predecessors, agents, employees, assigns, heirs, officers, directors, shareholders, members,

affiliated entities, and any entity or person related to them, jointly and severally (hereinafter the "Released Parties"), from any and all claims, demands, liabilities, debts, judgments, damages, expenses, actions, causes of action or suits of any kind which the Releasing Parties may have, may have had, or may hereafter raise against the Released Parties with respect to the Premises and the Action arising under Title III of the ADA including all claims by the Releasing Parties for attorneys' fees and costs, expert fees, litigation expenses, or any other amount, fee, and/or cost, with the exception of the attorneys' fees and costs required to be paid by Defendant pursuant to paragraph 3 of this Agreement.

     3.    **<u>Attorneys' Fees, Costs, Expenses, and all other Amount due by Defendant</u>**. Defendant has agreed to pay and Plaintiff has agreed to accept the total sum of Three Thousand Four Hundred Dollars ($3,400.00) ("Settlement Amount"), which shall be paid within twenty (20) days from the date Plaintiff signs this Agreement. This amount is inclusive of all Plaintiff's attorneys' fees in the Action and related expenses, as well as specific reimbursement of expert fees. The Settlement Amount shall be made payable to Weiss Law Group, P.A. Trust Account and be submitted to Weiss Law Group, P.A., 5531 N. University Drive, Suite 103, Coral Springs, Florida 33067 after Defendant receives a copy of this Agreement executed by Plaintiff at the email address of rmosher@kolter.com. Plaintiff's counsel further acknowledges that Plaintiff, Plaintiff's counsel, and their respective consultants, experts, and any similar person or entity are not entitled to any other amounts whatsoever from the Released Parties in connection with the Action and/or settlement of same up to this date in time.

     4.    **<u>Confidentiality</u>**. The Parties agree that the monetary terms of this Agreement shall not be communicated to any individual or entity engaged in the business of print or electronic media and/or journalism. The Parties agree that this Agreement shall not be filed with any court, except as

necessary for purposes of an action brought to enforce the terms of this Agreement, as set forth herein.  The Parties agree to maintain the confidentiality of the monetary terms of this Settlement Agreement.

5.      **Invalidation**.   If any provision of this Agreement is invalidated by a Court of competent jurisdiction, then all of the remaining provisions of this Agreement shall remain in full force and effect,  provided that the Parties may still effectively realize the complete benefit of the promises and considerations  conferred hereby.

6.      **Drafting**.  The Parties acknowledge that Plaintiff and Defendant were able to draft, review, and revise this Agreement and that the normal rule of construction to the effect that any ambiguities are to be  resolved against the drafting Party shall not be employed against any of the Parties in the interpretation of this Agreement.

7.      **Merger**.  This Agreement constitutes the entire agreement between the Parties hereto with respect to the matters set forth herein and supersedes in its entirety any and all agreements or  communications, whether written or oral, previously made in connection with the matter herein. Any  agreement to amend or modify the terms and conditions of this Agreement must be in writing and executed by  the Parties hereto.

8.      **Non-Admission of Liability**.   Neither this Agreement, nor  anything contained herein, shall constitute or is to be construed as an admission by Defendant, the Released Parties, or by any officials, contractors or agents of Defendant or the Released Parties of a violation of any federal, state or local statute, any state or municipal fire safety or building code, or as evidence of any other liability, wrongdoing, or unlawful conduct. The Parties acknowledge that this Agreement has been entered into by the Parties to avoid the costs and expenses of continued litigation and to settle disputed claims.

9. **Right to Bring Suit to Enforce this Agreement**.  Plaintiff reserves the right to bring suit against Defendant for failure to make the above referenced modification(s) listed in paragraph 1 and Exhibit "A" any time after the expiration of the Modification Deadline.  Any such suit shall be only be brought after thirty (30) days written notice to  rmosher@kolter.com advising of the modifications that need to be made and the modifications not being made within said thirty (30) days.

10. **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Florida and, where applicable, the ADA without regard to principles of conflicts of law and any suit arising as a result of a breach of this Agreement shall be filed in the United States District Court for the Southern District of Florida.

11. **Dismissal.**  Within ten (10) business days of the date this Agreement is fully executed, Plaintiff shall file a Notice of Voluntary Dismissal dismissing the Action with prejudice.  The Parties further agree that this Agreement shall not be filed with the Court, except as necessary for enforcement purposes.

12. **Counterparts**.   The Parties agree that this Agreement and any and all other documents in connection with settlement of this matter may be executed in exact counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument. Any signature page delivered by facsimile transmission or e-mail shall be treated in all manner and respects as an original document.

13. **Attorneys' Fees**.  Should either Party to this Agreement institute litigation related to this Agreement or the Parties' performance hereunder, the prevailing Party in such litigation shall be entitled to recover its reasonable attorney's fees and costs, both at the trial and appellate level.

14. **Warranty of Capacity to Enter into this Agreement**.  Each of the Parties represents and warrants that no other person or entity has any interest to the claims, demands, or obligations

referred to in this Agreement, and that each Party has the sole right and exclusive authority to execute this Agreement, and that each Party has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands or obligations released or referred to in this Agreement.

15.     **Non-Disparagement and Statements Permitted**. The Parties agree not to defame or disparage each other in any manner.  In any communication to third parties regarding the Action or this Agreement, the Parties will limit their communications to a statement that says that the Action has been resolved by mutual agreement of the Parties and that the terms of the Agreement are confidential.

16.     **Entire Agreement**.  This Agreement constitutes the entire agreement between the Parties hereto with respect to the matters set forth herein and supersedes in its entirety any and all agreements or   communications, whether written or oral, previously made in connection with the matter herein.  Any agreement to amend or modify the terms and conditions of this Agreement must be in writing and executed by  the Parties hereto.

17.     **Construction**.   The headings and captions of this Agreement are  provided for convenience only and are intended to have no effect in construing or interpreting this Agreement. The language in all parts of this Agreement shall be in all cases construed according to its fair meaning and not strictly for or against either Party.

18.     **Waiver**.  No failure or delay by either Party to exercise any right, power or privilege under this Agreement will operate as a waiver thereof and shall not operate as a waiver of either Party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

19.     **Purpose of Agreement**.  It is expressly understood and agreed by the Parties that this Agreement is being entered into solely for the purpose of avoiding the cost, expense and

inconvenience of further litigation and this Agreement is not to be construed as an admission of liability on the part of any person, firm, or corporation being released, such liability being expressly denied.

20.   **Benefit**.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto, and their respective successors, transferees, and assigns.

*SIGNATURES TO FOLLOW ON NEXT PAGE*

IN WITNESS WHEREOF, the Parties hereto execute this Agreement.

By: HOWARD COHAN                          Date 3/23/2020

DK DELRAY DOWNTOWN LLC d/b/a
COURTYARD BY MARRIOTT
DELRAY BEACH

By: Scott Webb                            Date 3/24/2020
Its: authorized Signator

# EXHIBIT "A"

**General Area of the Men's Restroom near Everglades:**

     a. Providing a gate or door with a continuous opening pressure of greater than 5 lbs. exceeding the limits for a person with a disability in violation of 2010 ADAAG §§404, 404.1, 404.2, 404.2.9 and 309.4 and/or §4.13.11 of the 1991 ADA Standards.

**Accessible Stall of the Men's Restroom near Everglades:**

     a. Failing to provide a dispenser in an accessible position (back wall or other inaccessible place) so that it can be reached by a person with a disability in violation of 2010 ADAAG §§606, 606.1, 308 and 308.2.2 and/or §§4.16.6, 4.22.7, 4.27 and 4.27.3 of the 1991 ADA Standards.

     b. Failing to provide the flush controls on the open side of the water closet in violation of 2010 ADAAG §§604, 604.6, 604.8.2 and 604.9.5 and/or §§4.18.4 and §4.16.5 of the 1991 ADA Standards.

     c. Failing to provide toilet paper dispensers in the proper position in front of the water closet or at the correct height above the finished floor in violation of 2010 ADAAG §§604, 604.7 and 309.4 and/or §4.16.6 of the 1991 ADA Standards.

    d.   Providing grab bars of improper horizontal length or spacing on the back or side wall in violation of 2010 ADAAG §§604, 604.5, 604.5.1, 604.5.2, 609 and 609.4 and/or §§4.26 and 4.26.2 of the 1991 ADA Standards.

    e.   Failing to provide the proper insulation or protection for the plumbing or other sharp or abrasive objects under a sink or countertop in violation of 2010 ADAAG §§606 and 606.5 and/or §4.24.6 of the 1991 ADA Standards.

    f.   Failing to provide mirror(s) located above lavatories or countertops at the proper height above the finished floor in violation of 2010 ADAAG §§603 and 603.3 and/or §§4.19 and 4.19.6 of the 1991 ADA Standards.

    g.   Failing to provide operable parts that are functional or are in the proper reach ranges as required for a person with a disability (missing stall handle) in violation of 2010 ADAAG §§309, 309.1, 309.3 and 309.4 and/or §§4.27, 4.27.3 and 4.27.4 of the 1991 ADA Standards.

**Main Lobby's Unisex Restroom #1:**

    a.   Providing a gate or door with a continuous opening pressure of greater than 5 lbs. exceeding the limits for a person with a disability in violation of 2010 ADAAG §§404, 404.1, 404.2, 404.2.9 and 309.4 and/or §4.13.11 of the 1991 ADA Standards.

    b.   Failing to provide toilet paper dispensers in the proper position in front of the water closet or at the correct height above the finished floor in violation of 2010 ADAAG §§604, 604.7 and 309.4 and/or §4.16.6 of the 1991 ADA Standards.

    c.   Failing to provide the proper insulation or protection for the plumbing or other sharp or abrasive objects under a sink or countertop in violation of 2010 ADAAG §§606 and 606.5 and/or §4.24.6 of the 1991 ADA Standards.

**Main Lobby's Unisex Restroom #2:**

    a.  Providing a gate or door with a continuous opening pressure of greater than 5 lbs. exceeding the limits for a person with a disability in violation of 2010 ADAAG §§404, 404.1, 404.2, 404.2.9 and 309.4 and/or §4.13.11 of the 1991 ADA Standards.

    b.  Failing to provide a dispenser in an accessible position (back wall or other inaccessible place) so that it can be reached by a person with a disability in violation of 2010 ADAAG §§606, 606.1, 308 and 308.2.2 and/or §§4.16.6, 4.22.7, 4.27 and 4.27.3 of the 1991 ADA Standards.

    c.  Providing grab bars of improper horizontal length or spacing on the back or side wall in violation of 2010 ADAAG §§604, 604.5, 604.5.1, 604.5.2, 609 and 609.4 and/or §§4.26 and 4.26.2 of the 1991 ADA Standards.

    d.  Failing to provide the flush controls on the open side of the water closet in violation of 2010 ADAAG §§604, 604.6, 604.8.2 and 604.9.5 and/or §§4.18.4 and §4.16.5 of the 1991 ADA Standards.

**Men's Restroom near the Pool:**

    a.  Providing a swinging door or gate with improper maneuvering clearance(s) due to a wall or some other obstruction that does not comply with the standards set forth in 2010 ADAAG §§404, 404.1, 404.2, 404.2.3, 404.2.4 and 404.2.4.1 and/or §§4.13, 4.13.3 and 4.13.6 of the 1991 ADA Standards.

    b.  Failing to provide the flush controls on the open side of the water closet in violation of 2010 ADAAG §§604, 604.6, 604.8.2 and 604.9.5 and/or §§4.18.4 and §4.16.5 of the 1991 ADA Standards.

    c.  Failing to provide the water closet in the proper position relative to the side wall or partition in violation of 2010 ADAAG §§604 and 604.2 and/or §§4.16, 4.17.2 and 4.17.3 of the 1991 ADA Standards.

    d.  Failing to provide a dispenser in an accessible position (back wall or other inaccessible place) so that it can be reached by a person with a disability in violation of 2010 ADAAG §§606, 606.1, 308 and 308.2.2 and/or §§4.16.6, 4.22.7, 4.27 and 4.27.3 of the 1991 ADA Standards.

    e.  Failing to provide proper knee clearance for a person with a disability under a counter or sink element in violation of 2010 ADAAG §§306, 306.1, 306.3 and 306.3.1 and/or §4.24.3 of the 1991 ADA Standards.

    f.  Failing to provide the proper insulation or protection for the plumbing or other sharp or abrasive objects under a sink or countertop in violation of 2010 ADAAG §§606 and 606.5 and/or §4.24.6 of the 1991 ADA Standards.

    g.  Providing a gate or door with a continuous opening pressure of greater than 5 lbs. exceeding the limits for a person with a disability in violation of 2010 ADAAG §§404, 404.1, 404.2, 404.2.9 and 309.4 and/or §4.13.11 of the 1991 ADA Standards.

**Outdoor Pool Seating Area:**

    a.  Failing to provide seating for a person with a disability that has the correct clear floor space for forward approach in violation of 2010 ADAAG §§902, 902.2, 305 and 306 and/or §§4.2.4, 4.2.5, 4.32.2 and 4.5 of the 1991 ADA Standards.

    b.  Failing to provide a sufficient amount of seating when dining surfaces are provided for the consumption of food or drink for a person(s) with a disability in violation of 2010 ADAAG §§226, 226.1, 902, 305 and 306 and/or §5.1 of the 1991 ADA Standards.

**Bar Area**:

    a.  Failing to provide the correct height for accessible seating or work surface use for person(s) with a disability at a bar or adjacent table in the bar area, a baby changing table, a recreational area or table area adjacent to a pool for food or beverage service, or at a computer work surface in violation of 2010 ADAAG §§902, 902.1, 902.2, 902.3, 305, 306 and/or §4.32.4 of the 1991 ADA Standards.

    b.  Failing to provide seating for a person with a disability that has the correct clear floor space for forward approach in violation of 2010 ADAAG §§902, 902.2, 305 and 306 and/or §§4.2.4, 4.2.5, 4.32.2 and 4.5 of the 1991 ADA Standards.

    c.  Failing to provide a sufficient amount of seating when dining surfaces are provided for the consumption of food or drink for a person(s) with a disability in violation of 2010 ADAAG §§226, 226.1, 902, 305 and 306 and/or §5.1 of the 1991 ADA Standards.

2.    Based on a preliminary inspection of the Premises, Defendant is in violation of 42

**Lobby**:

    a.  Failing to provide seating for a person with a disability that has the correct clear floor space for forward approach in violation of 2010 ADAAG §§902, 902.2, 305 and 306 and/or §§4.2.4, 4.2.5, 4.32.2 and 4.5 of the 1991 ADA Standards.

    b.  Failing to provide a sufficient amount of seating when dining surfaces are provided for the consumption of food or drink for a person(s) with a disability in violation of 2010 ADAAG §§226, 226.1, 902, 305 and 306 and/or §5.1 of the 1991 ADA Standards.

**Unisex Restroom at the Fitness Center:**

a. Providing a gate or door with a continuous opening pressure of greater than 5 lbs. exceeding the limits for a person with a disability in violation of 2010 ADAAG §§404, 404.1, 404.2, 404.2.9 and 309.4 and/or §4.13.11 of the 1991 ADA Standards.

b. Failing to provide the flush controls on the open side of the water closet in violation of 2010 ADAAG §§604, 604.6, 604.8.2 and 604.9.5 and/or §§4.18.4 and §4.16.5 of the 1991 ADA Standards.

c. Failing to provide the water closet in the proper position relative to the side wall or partition in violation of 2010 ADAAG §§604 and 604.2 and/or §§4.16, 4.17.2 and 4.17.3 of the 1991 ADA Standards.

d. Failing to provide the proper insulation or protection for the plumbing or other sharp or abrasive objects under a sink or countertop in violation of 2010 ADAAG §§606 and 606.5 and/or §4.24.6 of the 1991 ADA Standards.

e. Failing to provide proper knee clearance for a person with a disability under a counter or sink element in violation of 2010 ADAAG §§306, 306.1, 306.3 and 306.3.1 and/or §4.24.3 of the 1991 ADA Standards.

f. Failing to provide toilet paper dispensers in the proper position in front of the water closet or at the correct height above the finished floor in violation of 2010 ADAAG §§604, 604.7 and 309.4 and/or §4.16.6 of the 1991 ADA Standards.

g. Providing grab bars of improper horizontal length or spacing on the back or side wall in violation of 2010 ADAAG §§604, 604.5, 604.5.1, 604.5.2, 609 and 609.4 and/or §§4.26 and 4.26.2 of the 1991 ADA Standards.